IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| John D. Horton, ) | |
| ) | Civil Action No. 3:03-2443-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **O R D E R and O P I N I O N** |
| James G. Roche, Secretary, ) | |
| Department of the Air Force, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff John D. Horton brings this action, *pro se*, alleging that Defendant James G. Roche, Secretary, Department of the Air Force breached a settlement agreement ("Settlement Agreement") reached after Plaintiff filed discrimination charges pursuant to Title VII of the Civil Rights Act of 1963. This matter is before the court on motion to dismiss for lack of subject matter jurisdiction. (ECF Entry 67, filed March 3, 2006). For the reasons contained in this order, the court denies Defendant's motion and refers the matter for immediate mediation. Also before the court is Defendant's motion to strike Plaintiff's jury trial demand. ECF Entry 63.

## I.  FACTS

**A.  Underlying Factual Allegations**

The facts of this case are well documented in previous orders of the court. In short, Plaintiff filed an Equal Employment Opportunity ("EEO") complaint alleging discrimination by Defendant in violation of Title VII. Defendant entered into the Settlement Agreement on September 13, 2000. The relevant paragraphs of the settlement agreement state:

3.    The Agency and the complainant agree that:

      a.      The complainant will submit a Letter of Resignation for personal reasons to be effective 22 March 2000 The Letter of Termination dated 15 March 2000 will be removed and all records pertaining to the termination will reflect the same.

      b.      The agency will provide Letters of Recommendaiton to complainant from LtCol Sylvia Pringle and LtCol Donald Hatcher similar in nature to the interviews they provided to the EEO Counselor dated 12 April 2000 and 14 April 2000.

4.      No reprisal action will be taken against the complainant in any way due to his participation in a protected activity. Complainant's signature on this agreement constitutes full and complete settlement of the above captioned EEO complaint. In addition, the complainant agrees to waiver his rights to pursue administrative or judicial action in forum concerning the matters raised in this complaint, which include any matters that occurred prior to the execution of this settlement agreement, and that they will not be made the subject of future litigation.

Negotiated Settlement Agreement, 1 (ECF Entry 42-2) (errors in original).

Plaintiff alleges that Defendant violated the terms of the Settlement Agreement on several occasions: (1) in March 2001 when he interviewed for the position of library technician with the Executive Office of the President; (2) in April 2001 when he interviewed with the Immigration and Naturalization Service; (3) in April 2001 when he was offered a position as a technical information specialist with the Air Intelligence Agency; (4) in April 2002 when he was offered a position as a librarian with the United States Department of State; and (5) in May 2003 when he was removed from a position at a VA Medical Center in Philadelphia, Pennsylvania. See EEO Complaint File, 13-16 (ECF Entry 1), Plaintiff's "Notice of Yet Another Wrongful Disclosure Made by the Defendant in Violation of the EEO Settlement Agreement, 1-3 (ECF Entry 35).[1] Plaintiff alleges

---

[1] Plaintiff also alleged in his initial EEO Complaint that Defendant violated the anti-retaliation provision of the settlement agreement in August of 2001 when he was the victim of an alleged "terrorist attack by the Security Forces at Pope Air Force Base" in North Carolina. EEO Complaint File, 14-15. By order of the court filed on March 11, 2005, summary judgment was granted to

that each of these job interviews and/or offers was withdrawn or denied after the agencies contacted officials at Shaw Air Force Base and received derogatory statements about Plaintiff.

**B. Procedural History**

A brief summary of portions of the procedural history of this case is in order. The case was originally filed in the United States District Court for the District of Columbia and was transferred to the District of South Carolina on June 27, 2003 by order of the Honorable Ellen S. Huvelle, United States District Judge. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., the matter was initially assigned to Magistrate Judge Bristow Marchant for pre-trial handling.[2]

Following numerous discovery-related motions, Defendant moved for summary judgment on all claims on April 1, 2004. (ECF Entry 24). Plaintiff filed a response and a cross-motion for summary judgment on April 26, 2004. (ECF Entry 28). On December 22, 2004, the Magistrate Judge recommended granting Defendant's motion for summary judgment as to all of Plaintiff's claims with the exception of Plaintiff's allegation that Defendant beached the settlement agreement in April 2002 when Plaintiff sought employment with the United States Department of State. Report and Recommendation, 13 (ECF Entry 31). After receiving objections and additional evidence included in a supplemental pleading filed by Plaintiff,[3] the court declined to adopt the Magistrate

---

Defendant on this claim. See Order entered March 11, 2005, 5 (ECF Entry 40).

[2] Plaintiff's reply in opposition to Defendant's motion to dismiss or to transfer venue from the District Court in Washington, D.C. included motion for summary judgment and a motion for sanctions. On October 29, 2003, the court adopted the Magistrate Judge's recommendation that both motions be denied.

[3] Plaintiff's supplemental pleading included a court opinion in a case in which Plaintiff's unemployment compensation was at issue. See Order Filed March 11, 2005, 4 (citing Plaintiff's Supplemental Opposition at Exh. A). The judge in the unemployment case found that as part of a

3

Judge's recommendation in full and granted summary judgment to the Defendant only as to Plaintiff's claim that he was the victim of a "terrorist attack." Order Filed March 11, 2005, 5 (ECF 40). In so doing, the court noted that Plaintiff's supplemental pleading revealed a question of fact as to whether Defendant "may have breached the settlement agreement in this case with each of the federal agencies for which Plaintiff worked and/or was interviewed by advising those federal agencies that Plaintiff was allowed to resign instead of being terminated." Id. at 6. Rather than ordering the case to trial, the court provided Defendant with additional time to respond to Plaintiff's supplemental pleading and, if necessary, to file additional dispositive motions. Id.

On March 25, 2005, Defendant filed a short response to Plaintiff's supplemental pleading indicating that Defendant "does not have enough information at this time to answer or admit the allegations of the supplemental pleading." Response, 2 (ECF Entry 44). Defendant contemporaneously filed a motion to extend the time to file a summary judgment motion stating that he needed more time to resolve certain "critical issue[s] in this case . . . ." Motion for Extension of Time, 2 (ECF Entry 45).[4] On March 30, 2005, the court granted Defendant's motion and again referred the case to the Magistrate Judge for the handling of the Defendant's purportedly forthcoming dispositive motion.

---

routine background check, a federal agency where Plaintiff previously worked contacted the Office of Personnel Management, which "does background checks and issues reports to [the agency] and other Federal Agencies." Id. The court ruled that "[t]he report from the Office of Personnel Management reflected that Plaintiff was terminated from Shaw Air Force Base, but then was allowed to resign instead of being terminated." Id.

[4]

Defendant averred that these critical issues "concern[ed] (1) whether the termination information was removed from his file and/or (2) the source of the information concerning the resignation/termination from Shaw Air Force Base." Motion for Extension of Time, 2.

4

On June 16, 2005, Defendant filed a motion to dismiss the action or, in the alternative, for summary judgment. Motion to Dismiss filed on June 16, 2005, 1 (ECF Entry 54-1). Defendant failed, however, to address the previously identified "critical issues" and instead argued that the court does not have jurisdiction over this action because plaintiff had not completely pursued and fully exhausted the administrative remedies available to him . . . ." Memorandum in Support of Motion to Dismiss, 1 (ECF Entry 54-2). After Plaintiff filed a response to the motion refuting Defendant's allegation, Defendant withdrew his motion to dismiss. Withdrawal of Motion, 1 (ECF Entry 57).

Following the withdrawal of Defendant's motion, the Magistrate Judge forwarded the case file to the District Court for trial. A notice of hearing was filed on February 8, 2006 setting April 4, 2006 for jury selection. On March 3, 2006, Defendant filed a motion to strike Plaintiff's demand for a jury trial. Motion to Strike, 1 (ECF Entry 63). Plaintiff did not respond to this motion. On March 3, 2006, Defendant also filed a motion to dismiss for lack of jurisdiction. Plaintiff responded on March 28, 2006. Response in Opposition to Motion, 1 (ECF Entry 75). Defendant failed to file a timely reply.[5]

---

[5] Defendant was notified that any reply to Plaintiff's response must be filed "by 4/4/2006 plus 3 calendar days . . . ." ECF Entry 75. On April 10, 2006, counsel for Defendant filed a motion for an extension of time to file a reply indicating that "[lead counsel was] on . . . vacation and would like an opportunity to file a [r]eply on her return." Motion for Extension of Time, 1 (ECF Entry 78). The court denied the request.

## II. LAW/DISCUSSION

**A. Motion to Dismiss**

Defendant argues that jurisdiction is not proper in the District of South Carolina pursuant to the Tucker Act; 28 U.S.C. § 1491(a)(1).[6] Memorandum in Support of Motion to Dismiss, 5. Defendant argues that Plaintiff's complaint represents a contract dispute with the United States government seeking damages in excess of $10,000. Id. at 2. Accordingly, Defendant avers that the Tucker Act mandates that the case should be before the Court of Federal Claims. Id. at 3 (citing 28 U.S.C. § 1491(a)(1)). The court disagrees.

In order to invoke the jurisdiction of the Court of Federal Claims, a plaintiff's claim must be for "actual, presently due money damages from the United States." United States v. King, 395 U.S. 1, 3 (1969).[7] Plaintiff must establish a "substantive right to recover money damages from the United States" in order for jurisdiction to be proper in the Court of Federal Claims. United States v. Testan, 424 U.S. 392, 398 (1976). The requirement of establishing this right to presently due money damages is based in the well-established rule that the Court of Federal Claims "does not have general equitable powers." Doe v. United States, 372 F.3d 1308, 1313-14 (Fed. Cir. 2004). Thus,

---

[6] The Tucker Act vests jurisdiction in the Court of Federal Claims for "any claim against the United States founded . . . any express or implied contract with the United States . . . or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (a)(1). Congress has further mandated that, subject to minor exceptions, "[t]he district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of [a] civil action or claim against the United States, not exceeding $10,000 in amount, founded . . . upon any express or implied contract with the United States. . . ." 28 U.S.C. § 1346 (a)(2).

[7] Though the ruling in King has resulted in subsequent statutory revisions, "[t]he basic rule that the Supreme Court announced in King is still in effect and has not been changed by subsequent legislation." National Air Traffic Controllers Ass'n v. U.S., 160 F.3d 714, 716 (Fed. Cir. 1998).

absent a claim for actual money damages that are currently due, jurisdiction is improper in the Court of Federal Claims. Schnelle v. United States, 69 Fed. Cl. 463, 466 (2006).

Defendant states that "[i]n this action, plaintiff claims . . . damages in excess of $10,000." Id. at 2. In support of his contention, Defendant cites to an "attached exhibit." Id. at n.1.[8] Though the exhibit does establish that Plaintiff seeks damages well in excess of $10,000, the plain language of the Settlement Agreement and clearly established federal regulations dictate that Plaintiff is not entitled to money damages at all.

Under the terms of the Settlement Agreement, the only remedies available to Plaintiff in the event of a breach of the agreement by Defendant are: 1) the specific implementation of the settlement agreement, or 2) the reassertion of his Title VII complaint "from the point processing ceased under the terms of this settlement agreement." Settlement Agreement, 1. The exclusivity of these remedies is also mandated by 29 C.F.R. § 1614.504(a), which provides these same two remedies as the exclusive relief alternatives for employees alleging that an agency or government entity has breached a settlement agreement resulting, as here, from an Equal Employment Opportunity complaint. See also Schnelle, 69 Fed. Cl. at 466; Bailey v. Potter, 2006 WL 418608, *5 (E.D.Va. 2006) (unpublished opinion); Frahm v. United States, 2005 WL 1528421, *3 (W.D. Va. 2005) (unpublished opinion). Thus, the court finds that Plaintiff is not entitled to money damages and rules that Plaintiff is limited to those remedies enumerated in the settlement agreement and

---

[8] When Defendant's motion to dismiss was filed, there was no attached exhibit. After being notified by the court of this oversight, Defendant filed the attached exhibit on May 25, 2006, noting that though "[the] document was intended to be an exhibit to [Defendant's] Memorandum in Support of Motion to Dismiss, . . . it was apparently not filed with the Memorandum." Notice of Filing, 1 (ECF Entry 80). The attachment is a copy of "Plaintiff's Response to the Defendant's Discovery Request" and includes a demand for over $10,000,000 in alleged damages. Id. at Attachment 1, 3.

outlined in 29 C.F.R. § 1614.504(a).  Jurisdiction is proper in this court because Plaintiff is not entitled to money damages.  See 28 U.S.C. § 1346 (a)(2).  Accordingly, Defendant's motion to dismiss is denied

Moreover, the law remains unsettled whether jurisdiction for claims exceeding $10,000 that allege the breach of Title VII settlement agreements is proper in the Court of Federal Claims. Defendant cites a recent decision from the Court of Appeals for the District of Columbia to support his argument that "'a claim for a breach of a Title VII settlement agreement is a contract claim within the meaning of the Tucker Act and therefore, for claims exceeding $10,000[,] jurisdiction belongs with the Court of Federal Claims.'" Memorandum in Support of Motion to Dismiss, 1 (quoting Rochon v. Gonzales, 2006 WL 463116 (D.C. Cir. 2006)).  Defendant urges the court to adopt the Rochon court's holding because the "reasoning of the D.C. Court of Appeals is on all squares with [the instant] case." Id.

The court notes that while the Court of Appeals for the District of Columbia has resolved jurisdictional questions resulting from claims for a breach of Title VII settlement agreements, the Rochon holding is not wholly shared by the Court of Federal Claims.  In Schnell, the Court of Federal Claims noted the finding of the Court of Appeals for D.C. but stated that the question of "whether this court has jurisdiction over a claim for a breach of a Title VII agreement remains an open question." 69 Fed. Cl. at 465 n.1. (2006).  Indeed, the Court of Federal Claims has previously held that it has no jurisdiction over a claim based on a Title VII settlement agreement. See Griswold v. United States, 61 Fed. Cl. 458, 465 (2004) ("The court has consistently held that it lacks jurisdiction to hear claims alleging the breach of a Title VII settlement agreement . . . .").  Thus, if the court were to transfer the case at Defendant's urging, there is a high likelihood the Court of

Federal Claims may dismiss Plaintiff's claim or order its immediate return to the District of South Carolina.

Noting that this case was transferred to this court from Washington, D.C. on Defendant's motion and that Defendant has waited three years to raise the underlying argument, the court chooses not to subject Plaintiff to the Sisyphean challenge of perpetually responding to allegations of improper jurisdiction on the brink of trial. To that end, with the noted limitations on the damages available to Plaintiff and pursuant to the court's standing order on mediation, the case is immediately ordered to mediation in an effort to promptly resolve the remaining matters in dispute. The court notes that Plaintiff is granted leave to file a motion for the appointment of an attorney to assist him in the prosecution of his case.

**B. Motion to Strike Jury Trial Demand**

Defendant also filed a motion to strike Plaintiff's demand for a jury trial to which Plaintiff failed to respond. Defendant claims that the Seventh Amendment's right to a jury trial does not apply to suits against the federal government. Motion to Strike, 2. Though Defendant recognizes that Title VII affords a Plaintiff a right to trial by jury against "a respondent who engaged in unlawful intentional discrimination," Defendant argues that because the instant matter is a breach of contract action, no jury trial exists. Id. at 3. The court agrees.

"It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." Lehman v. Nakshian, 453 U.S. 156, 160 (1981). It is also well recognized that "'the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.' " Id. (additional citations omitted). "Thus, if Congress waives the Government's

immunity from suit . . . the plaintiff has a right to a trial by jury only where that right is one of 'the terms of [the Government's] consent to be sued.'" Id. (quoting Testan, 424 U.S. 392, 399 (1976)).

The court has already ruled that Plaintiff's claims are properly construed as alleging a breach of contract by Defendant. See Order Adopting Report and Recommendations filed 3/11/2005, 1 n.1. Though there is no doubt that Defendant has waived sovereign immunity for actions to enforce an EEO settlement agreement, it cannot be unequivocally stated that Defendant also consents to a trial by jury for such actions. See Bowden v. United States, 176 F.3d 552, 555 (D.C. Cir. 1999). Accordingly, Defendant's motion to strike Plaintiff's jury trial demand is granted.

### III.  CONCLUSION

For the reasons noted hereinabove, the court **DENIES** Defendant's motion to dismiss (ECF Entry 67). The court **GRANTS** Defendant's motion to strike Plaintiff's jury trial demand. (ECF Entry 63). The court notes that the entry of this order **MOOTS** Plaintiff's motion for an extension of time to file pre-trial briefs (ECF Entry 74). Magistrate Judge Joseph R. McCrorey has agreed to mediate this action. The case is hereby stayed pending resolution of the mediation.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Margaret B. Seymour
United States District Judge

June 1, 2006
Columbia, South Carolina